September 13, 1623 FH v. Memphis City Schools September 13, 1623 FH v. Memphis City Schools September 13, 1623 FH v. Memphis City Schools   I am Craig Barnes and I represent the appellants in this case, FH and Sandra Hall. This case is about the psychological, the physical, the sexual abuse of a child with cerebral palsy at the hands of a school district for a period of years. In this case, under either the relief available under IDEA, either under the relief-centered standard now of pain, or of the injury-centered standard of SE at this court, which relied particularly on Rob, which has now been overruled by pain, this child in this situation, there was no relief available under IDEA. In fact, the district court erred particularly in this case by focusing on facts, facts that were of only the educational nature, and also relied on the injury-centered approach in Rob. However, by ignoring this... Yes, Your Honor. I mean, just to clear that up, I mean, the district court had to apply the injury-centered approach, as you described it, and so do we, don't we? I mean, unless all 15 of us are here. Yes, Your Honor. What I'm arguing, again, is that under either the injury-centered... Right, I understand. I mean, just to sort of clear out the underbrush, we have to apply that, I guess, in this proceeding. That's correct. And I guess what I'm going to do is I'm going to be asking this court to seriously consider pain and look at possibly overruling SE, which relied on Rob, because Rob was the basis of the injury-centered. And now that Rob is... Three of us can't do it, is my point. Yes, Your Honor. We can't overrule the injury precedent, is what I'm saying. Anyway, I don't want to get bogged down, so go ahead. Okay. Well, under the injury-centered approach of SE and Rob of this court, basically focused on purely characterizing the issues as educational issues rather than issues that were related to the injuries, the psychological, physical, and sexual abuse of the child. And I guess, Your Honor, in saying that, I would say that with the overrule of Rob and pain, it's going toward a lowering and lessening number of circuits are holding that. The injury-centered is correct. It's focusing more on the relief-centered because of the clarity of that and some other things. But moving on, under Section 20 U.S.C. 1415L, the clear language of the statute. And the statute in this case is a statute, and that particular language in that statute focuses on a construction. It's a rule of constructions for that statute. And the first part of the statute says, specifically, that nothing in the chapter shall be construed to restrict the rights, limits, procedures, or remedy under the Constitution, the ADA, or the Rehabilitation Act, or of federal laws protecting rights of children. Except, and this is the exception, except when a civil action under these laws is seeking relief that is also available under this chapter. In other words, the assumption, the premise in this rule of construction specific to that law is that you have a right to file under the Constitution of the United States, that you have a right under the ADA and the Rehabilitation Act, to first bring those independent actions. And after that, the exception, not the rule, the exception is exhaustion. And the exception, looking at the rights and relief. It would be helpful to focus on what specifically you're asking for and then to try to think, were these things that were covered by the agreement or are these things that have happened after the agreement and therefore should be treated differently? And why isn't relief under the IDEA sufficient? Well, let's start with relief under the IDEA to answer your question. What is available under the IDEA? First of all, the purpose of the IDEA itself is to ensure that all children with disabilities have available to them a free, appropriate education that emphasizes special education and services to meet their unique needs. Services defined by IDEA, related services, are to include, quote, unquote, transportation and such development of corrective and supportive services as may be requested to assist the child with a disability to benefit special education and to include early identification and assessment of disabling conditions. So, for example, related services would include speech therapy. They would include occupational therapy, testing and assessment. They would not include emergency medical services or psychiatric services. Stop for a second and answer Judge Moore's question. What are you asking for? Well, we're asking for the court to find that in this particular case, under these facts, particularly with the sexual abuse, that this is under the injury standard in Tennessee, that that is not something that there is relief for under the IDEA and therefore they should be able to move forward with their Section 1983 claim, which was dismissed on a 12B6 motion, or in this case, and not specifically have to go through an exhaustion process. That is not proper. And did these events of sexual abuse occur before or after the settlement agreement? Okay, the issues of sexual abuse actually occurred after the settlement agreement. This was something in there. There are a number. In this case, there is a before and after, and certainly there is the agreement. And there was ten years before that, and then there was some three years after it. This occurred after. It occurred in a private bathroom with an aide on multiple occasions after the settlement agreement. Well, let me ask you about that because, as I understand your complaint, maybe I'm misunderstanding it, but, I mean, first of all, you haven't sued the guy who did that. You've sued the school. So now you've got to show failure to supervise and, you know, all that kind of stuff. And I read your complaint only to allege one instance of this, and the guy got fired because he did it to some other people too. So aren't you in trouble with even pleading a claim based on that against the city? Well, your Honor, actually I allege I had about 80 paragraphs, I think, in my complaint. And what I will grant is that there are a lot of facts in this case. I was covering some very long period of time within the facts, and I think as a court could reasonably, a district court might reasonably look in there and pick out certain things, and there is some confusion to it in the educational nature. But the point is I pled. If you review the complaint to its entirety at the end, during the facts, I did a plea, particularly the sexual abuse. It's a little bit later in there, I think paragraph 70 or somewhere on the back. But I pled that. It's in the complaint. This is a motion dismissed. All I have to do is plead that. It's considered. You plead an incident on February 9, 2012, is my understanding. And then in paragraph 97 you go on to say he was fired. Okay, that was fired. But if we go, this is a Section 1983 claim. It's against the school district. I do have to prove, as you pointed out, policy or a custom, a habit, something of that nature. I have to show they act under state law, under color of law, and it is a difficult road to go. Now, I modeled this after Sagan in the Middle District of Tennessee, actually, which filed a successful 1983 claim. And it filed against the school district itself plus an individual. In this case, there were so many individuals. This is over such a long period of time. I believe in total in his life he had 18 aides. I believe that during the period of time here he had six or seven. One from one group where they had independent, some of them were direct employees, some of them were independent contractors. What I saw was a pattern, a practice, and a custom. And this was a problem with the whole wide school district. This is a problem that goes from the base to possible policies we could dig out from doing discovery to clearly what I thought was a custom. Going through and actually filing a claim against 20 different people in each individual thing was, in a sense, it's a strategic move. We're focusing on the school district in 1983. And we're looking at this as a systematic problem, a systematic problem that was not addressed, that was brought to the principal, the superintendent, the school board, and beyond. And this is something that I felt over years and years was being ignored. And it was serious and it was substantial. And it was something that I think we saw as a little bit bigger than just the one bathroom incident. But that incident is important because there are specific cases in Tennessee which say that this is relief can be found under IDEA except for sexual abuse. There's about five of them in the Ninth Circuit. There's Witt, there's Sagan in the Sixth Circuit. So the theory then is a failure of the school to supervise the aides, thereby allowing the aides to do sexual abuse over a period of time and you have certain incidents listed. A failure to supervise and then maybe negligent hiring and other kinds of responsibility on the part of the school, the public entity in their hiring and retention of people who are engaging in these kinds of activities. And so your claim is then that this is outside the IDEA. Yes, Your Honor. This is not relief that can be provided by the IDEA. Administrative exhaustion is appropriate. It's not appropriate. It's not appropriate. I'm sorry. And your client has graduated from high school. So he's no longer receiving any services? No. In fact, he graduated from high school. He's 19 and he has a regular education degree. We're not seeking educational services. That's a futility argument. I made that with the futility piece. We're getting close to finally answering Judge Moore's original question. I take it from your answers that all you're seeking is money damages. Retrospective damage is correct, Your Honor. Well, let me say, first of all, I'm very sympathetic to your argument about relief-based, but we just can't do it in this case, in my opinion. So we have to take an injury-based. And this complaint was filed when your client was still a student at the high school. Yes. And if it's an injury-based, and we have precedent that says the fact that you sought only money damages does not mean that you don't have to exhaust. And, I mean, isn't it fair to say that there were some potential remedies available to your client under IDEA at the time you filed the complaint, prospective remedies, that you chose not to invoke? And I don't blame you for not choosing them. But, I mean, doesn't the fact that there were potential remedies available at the time you filed the complaint under IDEA mean, under our precedent, that you had to exhaust and go through a process and see if that can resolve the claims or not? No. In fact, not that I'm asking you. Actually, I guess to look at pain, because it addresses that head-on, plus it brings up that issue. Well, let's talk about Sixth Circuit cases, not this. Well, the thing is, I'm looking directly at, what I'm asking you to do is look at the original language in IDEA itself. Okay? To look at the statute itself, to look at the definition of related services, and to look how it describes. It starts off with transportation and also other things that could help a child benefit from special education. When you're being beaten, when you're being sexually abused, when you're doing all this, you're darn right this is going to affect your education. And just because you're sustained an unconstitutional beating doesn't mean you're not going to get out free on that. But this is something that clearly is not designed. This is not a shield to remedy and liability. IDEA was never intended to be a shield of liability to the school districts. And this is what I'm arguing today. Don't let it be one. Thank you. Good morning, Your Honors. Good morning. Christopher Campbell representing the Memphis City School District, at least what used to be the Memphis City School District. It's now Shelby County Board of Education, and the legacy is Memphis City Schools. Your Honors, I think you pointed at the right thing here. What we're talking about in this case and what we are asking for is for the court to affirm the decisions that were made first by the magistrate judge and then secondly, and most importantly, by the district court judge. What the district court judge did and what they were faced with is a situation, and I think plaintiff's counsel repeatedly mentioned fact and asked the court and mentioned those things that were factual. They're allegations at this point. They're allegations. That's all they are at this point, which is important because when you look at IDEA and what the intent is, there are some procedural hurdles that must take place here. Let's talk hypothetically. Suppose that someone is getting IDEA services because of a disability, and suppose that that person has an aide and that the aide takes a baseball bat and beats the student with the baseball bat. Why on earth should there be an exhaustion requirement under the IDEA when a regular student could file suit claiming failure to supervise, negligent training, et cetera, manel liability? Well, I think under that circumstance, as Your Honor has phrased or framed the hypo, what you're looking at then is a situation that's clearly outside of IDEA. What plaintiff has alleged here are not matters that's clearly outside the IDEA. What's the difference? I mean, hypothetically, why is sexual abuse not clearly outside of IDEA, just like the baseball bat hypo? Because when you say sexual abuse, as plaintiff has alleged here, there are no factual basis for that. Well, I mean, he's pled it. This is 12b-6, right? I mean, he pled on a particular instance. The aide exposed himself to his client. We take that as true at this point in the case. And if we were to take it as true at this point in time, Your Honor, I think what we're dealing with is a situation where if we go through the process that's set up, there will be a factual basis to look at. I see. But you know what? I mean, we have 1983 cases all day long where we don't generate some administrative record. I mean, we can handle that. So why do we need – I mean, what are they going to resolve? In the baseball bat case, what are they going to resolve? Well, I think here, Your Honor, you have to examine the complaint. And if you examine his complaint, it's not simply an allegation of exposing himself. And I agree with you, Your Honor. There's only one note of that in the record. What they said were these things would take place in the bathroom. And I think the way they couched it, it led to educational setbacks. If we look at what the court has done, plaintiff's case was dismissed without prejudice as to those types of claims. It's possible that the IDEA, when we go in and administrative judges look at it, those situations is possibly a situation that doesn't even warrant us going to federal court. Didn't they already try this during the resolution session? I mean, on the face of the complaint, there's 10 years of terrible abuse. They have their due process. They've commenced that. They go to a resolution session. They sit down with the school district. They reach this agreement. And then they say for three years later, I mean three years afterwards, the agreement's being breached left and right. Haven't they already gone through this? They have not, Your Honor. I don't think they've availed themselves to the administrative process. Did the administrative judge or whoever it is enforce the contract? Yes. I think there's plenty of cases that talk about it. What about if there's a breach of contract? I think they could address that as well. What advantage to the school is it to add layers? Wouldn't it be, and perhaps I'm reading too much into the new entity that's running the schools, is this part of the problem that claims like this were fought procedurally rather than substantively? I don't think so. I'll try to address Your Honor's first question and refer back to Your Honor's question as well. I think if you look at this, you have to start with what was the intent of IDEA. Well, the intent of it was to prevent adversarial proceedings. And why it does not necessarily. Wait, for whose benefit? For both parties' benefit. Because the intent of IDEA was not to create a remedy in the sense of a monetary relief for plaintiffs. But was it also the intent of IDEA to diminish 1983 civil rights claims? It was not, and that's why it specifically says that when you follow this statute, you go through the administrative process. It would be no different in the 1983 case where you would have to go through the administrative process. Where do you have to go through the administrative process? I'm sorry, and I said 1983 case. I mean, in a Title VII case, if you have brought a case and you have to go through the process of dealing with those initial hurdles before you bring your claim. And importantly here, getting back to Judge Kichler's question, is we had an agreement in place. And the court looked at the agreement. What did the agreement cover? Well, the agreement said for those things that took place between 2002 and the signing of the agreement, which was April 9th of, I believe, 2012. Well, those things, they themselves, and the court always enforces contracts based on how the parties reached them. It said that they agreed to waive or release those claims. So what the court determined was, as to those claims, I'm not going to allow you to sort of store up claims. You were here for the last argument? I'm sorry? You were here for the last argument? I was. I was here for the last argument. You talked about contracts? We did, Your Honor. Looking at the Exhibit 1 to the complaint, which is the Compromise and Release Agreement, it says the purpose of this agreement is to fully and finally settle and resolve all educational claims between the parties. So how could sexual abuse matters be within the definition of educational claims? First of all, Your Honor, I think it went a little bit further than that. I don't have the agreement before me. But again, I think the basis of what's happened here, and sometimes there's an overlap when we're talking about IDEA. There's an overlap because, for instance, I've seen cases where someone said, I've been abused because of a particular discipline or something to that effect. Well, there's an overlap. So you have to go back and look at the gravamen of what they're asking for, and I think the court has pointed out that this circuit has adopted the injury standard. And looking at it from that perspective, if we go back, can IDEA remedy what plaintiff asked for? Yes. Plaintiff said there were some problems with assistive technology, that it wasn't being offered. Well, if you go through the IDEA process, then maybe those things can be remedied through the process, and it wouldn't be futile to do that. And I think, Judge Moore, you earlier... So assistive technology has to do with things that help somebody learn. Is that right? That's right. And with respect to the assistance, and this is where that alleged sexual assault come in, with respect to the system, oh, they weren't given proper training as to, well, you don't use the restroom in front of the young man. That's sexual assault. But it's not sexual, but it doesn't... That's not what's alleged here. But I think that's what their allegations go to, Your Honor, and that's what they... How do we know that? Well, we don't, and I think that's why we have to go back to the factual findings and go through that process. What factual findings? Well, the factual findings that you would get if we were to go back and allow the administrative judges who are better trained to know whether these things fit within... Not a good argument to judges. Well, I mean... Somebody else is better fit than we are. Well, when I say better fit, to see if these things are within the educational standpoint, better for the child under ADA, and I think that's the same thing the Sixth Circuit has said, that what we want to do is allow... He's not asking for any educational changes. He's too old. He's asking for money damages for violation of his civil rights. It seems to be pretty simple. Well, I think there's two things you would have to accept that plaintiff is saying there. One, that he's too old. Well, factually and statutorily, he is not too old. In fact, the IDEA in Tennessee... He's already got his diploma or the equivalent. He does, but Tennessee code annotated, which is adopted to help enforce IDEA cases, I think is Tennessee... He's got a master's in high school? I'm sorry? Master's degree in high school. What's the next step? It doesn't allow for a master's in high school, but it does allow for education beyond graduation and compensatory education. Would this be for people who have disabilities or for anyone? And does it go to a certain age? It's for those who have disabilities and those who would fall within the IDEA spectrum. And does it stop at a certain age, or does it go into... It stops at age 21, but, again, I think you also have to look at, if you were to accept plaintiff's premise, which was the second part of what I was about to argue, if you accept plaintiff's premise, then a party can come in, store up 10 years of claims, reach a settlement agreement, ask for those claims, and then for whatever reason, good or bad, say, you know what, there were some sexual allegations here because we don't like the way certain things took place. The sexual allegations are post-agreement. They're a post-agreement. They're new allegations. Which we, in contract law, might call breaches of the settlement agreement, failure of consideration. Therefore, that agreement waiving those 10 years is unenforceable. Well... That's the allegations. That's what we're dealing with. We're not dealing with what happened. We haven't had the discovery. We haven't had a trial. We haven't had all those fact-finding things. But if we adopt your argument and say you have to do administrative hearings, he will be 21 by the time it's over. Well, but that's exactly what I'm saying, Your Honor. Had they availed themselves to the administrative process...  They reached an agreement. The agreement was, according to them, not followed by your client. What more do the plaintiffs have to do? I think they have to follow the statute, Your Honor. If they reach an agreement, again, we're talking about an agreement that was reached outside of the window that's set statutorily. I mean, this agreement was reached 97 days after the resolution section. Because, I mean, we have a whole other claim here, a breach of contract claim, Section 1983. District Court said that there was an exhaustion requirement for this breach of contract claim. Let me ask you this. If we assume that the agreement was, quote, reached during the resolution session, I know you disagree with that. But hypothetically, if we say, yes, the agreement was reached during the resolution session, isn't it true that, therefore, now we have a statutory provision that says this agreement is enforceable in a District Court of the United States? Right? And so that on its face would seem to allow them to go to a District Court of the United States and seek to enforce the agreement. But your position is that before they can do that, they have to go through an exhaustion process. My question for you is where, if anywhere, in the statute do you find support for the idea that they cannot come to the District Court without exhausting? I do not find that in the statute, Your Honor. So is this just like some kind of common law we're making up here? I mean, my concern is they have a statutory basis for what they want to do. It seems like the District Court had none for imposing an exhaustion requirement on a breach of contract claim for a contract reached during a resolution session. Now, I want to give you a chance to respond or explain how the District Court was somehow correct. I think if we look at the case of S.E. versus Grant County Board of Education. Is this that California case? No, this is a Sixth Circuit case, Your Honor. Okay. And in that case, there was a situation where a young lady, there was some issues involving medication that she received. And I think what the young lady did is took the medication and gave it to someone else. And then there was a lawsuit that ensued from the parents because the child had been arrested, got an arrest, and so on and so forth. What the court said, Sixth Circuit said, was, well, I know you have this 504 claim in there, and you claim that she was discriminated some way because of her, you know, her disabilities or whatever, so forth. What they said is and allowed was for the court to be able to dismiss that case without prejudice because they said it's not clear what happened below. So the case was dismissed without prejudice, which is the same that's happened here. That is Section 1415F case that was involved in that? Yes. It was? I'm sorry, is that? I mean, were they seeking to enforce the settlement agreement described in Section 1514F in that case? They weren't seeking to enforce the settlement agreement. If using that same premise, which if I understood Your Honor's question, if you take the premise that there is an agreement and that agreement occurred within the resolution session, could the matter then proceed to federal court? Was that premise present in the case that you're talking about? Yes, but it wasn't per an agreement, and if I could just relate the two here and make an analogous argument, if you will. If the matter proceeded to federal court, which our matter did proceed to federal court, if the court said I'm looking at this complaint and what I'm seeing is a bunch of things that appear to be related to educational deficiencies, and what you've alleged are these things led to educational setbacks. If they in fact led to educational setbacks, then I don't have a record to support what you're asking for. I'm going to send it back. It's dismissed without prejudice, which is what's happened here. Effectively, plaintiff has not lost any of those claims. Effectively, if we go back. You're waiving any statute of limitation arguments? I'm not, because I think that's one of the issues that plaintiff has, even on those claims that went back 10 years prior. If they're trying to bring up all of these claims that they say they release, then we've got statutory arguments and so forth, Your Honor. And that's why I said their failure. You're saying broadly that they can bring their claims, which is the American dream. You can bring any claim you want, but the claims won't be successful, at least those that are barred by the statute of limitations. I think they could bring the ones that are within the statute, which some of the ones that they brought after the agreement was signed possibly would meet the muster. Schools could reach an agreement with their fingers crossed, and when they breach the agreement, all those claims that were subject to the agreement that are too old would be gone. I'm not sure that I understand Your Honor's question. That's okay. It's more rhetorical. Thanks. We appreciate your answers. Thanks very much. Your Honors, I want to help answer the question about the contract claim. First of all, they stipulated to the very section that they're arguing about right now, much like the contract claim you were discussing in the previous case, the parties stipulated that the agreement was reached at a resolution session and is enforceable in state or federal law pursuant to 20 U.S.C. 1415 F1B3 under a Biggs heading. And the heading was right next to the only other part that we dickered in in terms of whether or not when attorney's fees kicked in. It was right next to that part. It was right next to the only other part they looked at and suggested a change. There's no question they saw it. And Judge Turnow, based on how my client described what they did with that settlement agreement, what you went back to the school district, I think someone was putting their hands behind their back and crossing their fingers because there was no honor of that contract from the get-go. It was not brought down through. And this is something, and in my facts I probably have it, but it was not honored. Number two, sexual abuse is in no way educational or pedagogical. I've seen no case that has found that, and I think any argument to that amount. And I don't know that the opposing side is actually making that specific argument. If we rule your way, would you amend your complaint to add any other post-agreement sexual abuse? Well, what I think happens here. Is that a yes or a no? Yes. Thank you. And what I think happens here when you find that this contract, that the district court erred in never even looking at the contract, because you know why that is in part. The district court made an assumption that the parties had actually dismissed their case in due process and then came to a private settlement agreement afterward. If you go by that assumption and then you apply this, then yes, private settlement agreements have been found by no court to have any jurisdiction in the state or federal court. However, one that comes to a resolution session that was agreed to, stipulated by the parties themselves, does. And I think that is fairly clear. Other than that, I think I'd like to, at this point, does the court have any further questions? Has this case got a lot of publicity in Memphis? Yes or no? No, and I'm not one to go create a lot of publicity about a case. I'm focusing on my clients. I think this is a serious issue. I think, unfortunately, and for instance, when you had mentioned that the person who had abused in the bathroom was immediately fired, I'm not sure if I put that in there, but he was not. I was just reading your complaint, paragraph 97. He was dismissed. He was dismissed. Okay. But what will happen in discovery as you find out is that person was transferred somewhere else. They weren't immediately fired after the incident. It took another incident or two other incidents. This is a system-wide problem with this school district. The fact it's changed its name, which we can also amend in the complaint to add to Shelby County, has not changed their ways. Okay. Thank you. We ask now that you would reverse and remand to the court's opinion, and thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?